# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

PAUL ROLLEN,           )
                             )
       Petitioner,      )
                             )
     vs.                )     **Case No. 4:06CV1114CEJ/MLM**
                             )
CHUCK DWYER,[1]      )
                             )
       Respondent.    )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the First Amended Petition for Writ of Habeas Corpus filed by Paul Rollen ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 18. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted and an Amended Response. Doc. 6, Doc. 29. Petitioner filed a Traverse. Doc. 36. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 5.

## I.
## BACKGROUND

On June 10, 2002, Petitioner was charged by information in lieu of indictment as follows: Count 1, the class A felony of robbery in the first degree, in violation of Mo. Rev. Stat. §569.020, in that on or about Sunday, October 29, 2000, at approximately 2:00 p.m. Petitioner and Donnell E. Williams, acting together, forcibly stole U.S. currency in the possession of Brandi Roussin and in the course thereof, Donnell E. Williams, another participant in the crime, threatened the use of what appeared to be a deadly weapon; Count 2, armed criminal action, in violation of Mo. Rev. Stat.

---

[1]       Pursuant to 28 U.S.C. § 2254, Rule 2(a), the court has substituted Chuck Dwyer for Troy Steele as the superintendent of the Southeast Correctional Center.

§571.015, in that Petitioner and Donnell E. Williams, acting together, committed the felony of robbery in the first degree as charged in Count 1 by, with and through the use, assistance and aid of a deadly weapon; Count 3, felony murder second degree, in violation of Mo. Rev. Stat. § 565.021, in that on Sunday, October 29, 2000, at approximately 2:00 p.m., Petitioner and Donnell E. Williams, acting together, killed Brandi Roussin as a result of the perpetration of the felony of robbery in the first degree as charged in Count 1; Count 4, the felony of armed criminal action, in violation of Mo. Rev. Stat. § 571.015, in that Petitioner and Donnell E. Williams, acting together, committed the felony of felony murder in the second degree as charged in Count 3 by, with and through the use, assistance and aid of a deadly weapon; Count 5, the class A felony of felony murder second degree, in violation of Mo. Rev. Stat. § 565.021, in that Brandi Roussin's unborn child was killed by her being shot as a result of the Class A felony of robbery in the first degree committed by Petitioner and Donnell E. Williams, acting together; and Count 6, the felony armed criminal action, in violation of Mo. Rev. Stat. § 571.015, in that Petitioner and Donnell E. Williams, acting together, committed the felony of felony murder in the second degree charged in Count 5, by, with and through the use, assistance and aid of a deadly weapon. In Count 7 Petitioner was charged as a prior offender under Mo. Rev. Stat. § 558.016 in that on or about February 10, 1992, Petitioner pleaded guilty to the felony of Solicitation to Commit Murder First Degree. Resp. Ex. 2 at 19-22.

Petitioner was tried before a jury commencing June 25, 2002. The facts as adopted by the Missouri appellate court are as follows:

> Defendant worked at a convenience store from April to October 19, 2000, at which time he was fired from his job due to shortages in his cash drawer. Victim, the assistant manager of the convenience store, played a role in Defendant's firing. In the last week of October 2000, Victim was seventeen weeks pregnant.

As part of her duties, Victim would deposit the money received by the store at a bank. She put the money in a bank bag and then placed that bag in a brown paper bag to conceal the bank bag. On Sundays, Victim's routine would be to take the deposit to the bank around 2:00 p.m. when she finished work. She drove her gray Cutlass, which was always parked in the same parking space outside the store, to the bank. The employees of the store knew Victim's routine. On one Sunday, Defendant accompanied Victim on this task because she gave him a ride home. Defendant lived about a mile from the store.

On October 26, 2000, Defendant went to the store to pick up his last paycheck. He became irate and started yelling after an employee told him that he would have to wait until she got a hold of Victim, who was not present, because Victim was the only one who could give him his check. Eventually, the employee gave Defendant his check. Defendant became angry again when he noticed that the amount of his check was for less than he expected. He yelled "If you mother _ _ _ _ _ _ _ want to play games I will play some _ _ _ _ _ _ games. I will be back."

On Sunday, October 29, 2000, a few minutes before 2:00 p.m., Defendant went to the store. He bought a bag of potato chips and spoke with the cashier about his insurance when he worked at the store. The cashier said that Victim was in the back room and Defendant could go back there to speak with her. Defendant, who previously had been friendly and talkative with other store employees, was solemn, quiet, and had a "cold look" on his face. After speaking with Victim, Defendant left the store.

As Defendant went to his car, he nodded at Donnell Williams (Williams), a black male, who was sitting in a four-door maroon car with no license plates and a temporary tag in the rear window parked next to Victim's car. The front of Williams' car was facing the store. Defendant got into his car and drove to the tire air pump located in the store lot, where he got out of and stood against his car.

A couple minutes after Defendant exited the store, Victim left the store with the bag for the bank. When she reached her car, Williams pointed a handgun at Victim and fired a single gunshot into her chest. Williams then drove his car to where Victim dropped the bag for the bank, picked up the bag, and drove off.

Hearing the gunshot, employees in the store rushed outside to aid Victim. Defendant, who had remained standing against his car watching the incident with no expression, got into his car and drove off as Victim fell to the ground. Victim died before paramedics reached the scene.

Later that day, the police contacted Defendant as a possible witness to the crimes. A detective and a uniformed police officer went to Defendant's apartment

and knocked on the door for about fifteen minutes. Defendant eventually answered the door, told the officers that he had been at the store that day, and agreed to accompany the officers to the police station to make a statement.

That evening, the police went back to Defendant's apartment where they obtained written consent from Defendant's mother and girlfriend, who also lived at the apartment at the time, to search Defendant's bedroom. In the bedroom closet, the police found a white sock containing $1,170 in cash and a box of Winchester .38 caliber ammunition.

The police also obtained written consent to search Defendant's girlfriend's apartment, which was in the same apartment complex. Defendant and his girlfriend had lived at her apartment prior to the electricity being turned off, at which time they moved into Defendant's mother's apartment. Defendant had a key to his girlfriend's apartment. At the girlfriend's apartment, the police found $4,000 in cash under some underwear in a bedroom dresser drawer. Neighbors near the apartment saw Defendant come out of the apartment earlier that day, get into a maroon car with no license plates and a temporary tag in the rear window where he spoke with a black male, and then return[ed] to the apartment, looking "excited and joyous."

Later that evening, a detective at the apartment complex saw a maroon car with no license plates and a temporary tag in the rear window drive along side Defendant's apartment, turn around, and leave. The police followed the car to a restaurant, where Williams, who was driving the car, had to be forcibly removed from the car and subsequently was arrested.

In the basement of Williams' house, the police found a .38 caliber handgun, ammunition, cash, a bag, and a piece of paper with a telephone number and the name "Paul" written on it. The ammunition was the same ammunition as that found at Defendant's apartment.

Meanwhile, at the police station, a detective conducted a witness interview with Defendant. Defendant initially told the detective that he had witnessed the crimes, had run to help Victim after she was shot, and then left the scene. At one point, the detective left the interview room to check on the status of the investigation. He learned that Defendant had been seen in a car earlier that day that matched the description of the suspect vehicle. At that point, the detective advised Defendant of his *Miranda* rights, and Defendant signed a written waiver of those rights.

Defendant continued to tell different versions of the day's events until he finally confessed to the following: Defendant planned the robbery with Williams. They decided they needed two cars so Defendant drove Williams to Williams' house to get the maroon car. They then returned to Defendant's apartment. Defendant

went into his apartment to retrieve a handgun that he had borrowed from Williams two weeks earlier. Defendant gave the gun to Williams. They then left Defendant's apartment at about the same time and drove in separate cars to the store. Defendant entered the store, spoke with Victim, exited the store, looked at Williams and nodded to signal that Victim was there and that the robbery was still on. After seeing Williams shoot Victim and pick up the bag of money, Defendant drove to Williams' house, where Williams gave him about $5,000 from the robbery. Defendant then drove back to his apartment complex where he hid $4,000 in a drawer at his girlfriend's apartment and about $1,200 in a sock in a closet at his apartment.

Victim died from a gunshot wound that entered the left side of her chest, went through her heart and part of her lung, and lodged in the right side of her back. The bullet that killed Victim matched the ammunition found at Williams' house and was consistent with other bullets fired from the handgun found at his house. Victim's unborn child, which was a boy, was alive until Victim died, and then he also died when Victim died.

Resp. Ex. 5 at 2-6.

The jury found Petitioner guilty as charged on all counts. Resp. Ex. 2 at 49-55. The trial court found Petitioner to be a prior offender and sentenced him to six consecutive life terms. Resp. Ex. 2 at 60-63.

Petitioner filed a direct appeal in which he raised two issues: (1) the trial court erred in denying his motion to dismiss Counts V and VI, and subsequent motion for judgment of acquittal, because insufficient evidence existed to show that the victim's unborn child was a "person" within the meaning of § 565.021.1(2), and (2) the trial court plainly erred in failing to compel Williams to testify after Williams asserted his Fifth Amendment privilege against self-incrimination because testifying could not tend to incriminate Williams in that he already had pled guilty to the charged offenses. Resp. Ex. 5 at 1. On December 2, 2003, the Missouri Court of Appeals affirmed the judgment against Petitioner. Resp. Ex. 5; State v. Rollen, 133 S.W.3d 57 (Mo. Ct. App. 2004).

On July 12, 2004, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. 6 at 3-16.

Counsel was appointed and Petitioner filed an amended motion, which was denied by the motion court. Id. at 34-92. Petitioner appealed the decision of the motion court. In this appeal Petitioner raised the following issues: (1) Petitioner received ineffective assistance of trial counsel because counsel failed to object when Petitioner's co-defendant, Williams, asserted his Fifth Amendment privilege against self-incrimination; (2) Petitioner received ineffective assistance of trial counsel because counsel opened the door to written statements of Petitioner's neighbors that the State did not elicit on direct examination; (3) Petitioner received ineffective assistance of trial counsel because counsel failed to request the trial court specifically ask whether any juror had been approached and shown pictures of the victim; (4) Petitioner received ineffective assistance of appellate counsel because counsel failed to assert error in the trial court's denial of Petitioner's cross-examination of Detective Joseph Eagan; (5) Petitioner received ineffective assistance of counsel because appellate counsel failed to brief and argue that the trial court erred in overruling trial counsel's objection during closing argument to the prosecutor's improper and misleading statement; and (6) Petitioner received ineffective assistance of appellate counsel because counsel failed to assert error in the trial court's admission of a surveillance videotape because of an insufficient chain of custody. Resp. Ex. 6 at 38-42. On February 14, 2006, the Missouri appellate court affirmed the decision of the motion court denying Petitioner post-conviction relief. Resp. Ex. 9.

Petitioner filed his First Amended § 2254 Petition on January 25, 2007, in which he raises the following issues:[2]

**(1)** Petitioner was denied due process based on Roe v. Wade, 410 U.S. 113 (1973), and Webster v. Reproductive Health Services, 492 U.S. 490 (19899), because

_____

[2]    Petitioner stated in his First Amended § 2254 Petition that it "supercedes the original petition." Doc. 18 at 1.

the trial court overruled Petitioner's motion to dismiss Count V, felony murder, and Count VI, armed criminal action in regard to the felony murder alleged in Count V;

**(2)**     Petitioner received ineffective assistance of counsel because trial counsel failed to make a timely objection to, and properly preserve for appeal, the trial court's failure to compel Donnell Williams to testify at the request of defense counsel;

**(3)**     Petitioner received ineffective assistance of counsel because direct appeal counsel failed to raise on appeal the trial court's denial of Petitioner's "right to cross-examine Detective Joseph Eagan about Donnell Williams' exculpatory statements";

**(4)**     Petitioner received ineffective assistance of counsel because direct appeal counsel failed to raise on appeal "the issue that the prosecutor misled the jury during closing arguments to believe that [Petitioner] had given Mr. Williams the bullets used in the shooting";

**(5)**     Petitioner received ineffective assistance of counsel because trial counsel "failed to challenge in a pretrial motion to suppress statements, object to, and raise in the motion for new trial, the fact that [Petitioner] was denied" his constitutional rights "when the unsworn statements of [Petitioner] were allowed into evidence to prove the truth of matters asserted" and the unsworn statements of Donnell Williams were excluded.

Doc. 18.

# II.
## EXHAUSTION, DEFAULT, and TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but

also the substance of his federal habeas corpus claim." <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Id.</u> at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id.</u> at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. <u>Dretke v. Haley</u>, 541 U.S. 386, 388-89 (2004). <u>See</u> <u>also</u> <u>Coleman</u>, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." <u>Dretke</u>, 541 U.S. at 393 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986); <u>Schlup v. Delo</u>, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" <u>McCoy v. Lockhart</u>, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. <u>See</u> <u>Sweet,</u> 125 F.3d at 1152 (citing <u>Schlup</u>, 513 U.S. at 316). The Supreme Court, however, has limited the application of the

actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94. In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual

9

prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

In regard to the exhaustion requirement the Eighth Circuit holds:

> "[I]t is well settled that only after some clear manifestation on the record that a state court will refuse to entertain petitioner's claims will the exhaustion requirement be disregarded as futile." Powell v. Wyrick, 657 F.2d 222, 224 (8th Cir.1981); accord Eaton v. Wyrick, 528 F.2d 477, 482 (8th Cir.1975). The question is usually whether state law provides any presently available state procedure for determining the merits of the petitioner's claim; not whether the state court would decide in favor of the petitioner on the merits. See, e.g., Lindner v. Wyrick, 644 F.2d 724, 727 (8th Cir.), cert. denied, 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981) (return to state court not futile because Missouri rule allows second post-conviction petition if the

petitioner can show his claims are based on information not available at the time of the first petition); Thomas v. Wyrick, 622 F.2d 411, 414 (8th Cir. 1980) (whether state rule barring claims not raised in direct appeal makes post-conviction remedy presently unavailable is a question of state law).

Snethen v. Nix, 736 F.2d 1241, 1245 (8th Cir. 1984).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

Petitioner raised the issues which he raises in Grounds 1-4 before the Missouri appellate court. As such, the court finds that he has not procedurally defaulted these grounds for relief and that he has exhausted his State remedies in this regard. Respondent contends that Petitioner has procedurally defaulted Ground 5.

Petitioner did not raise the issue of Ground 5 before the Missouri appellate court. The court finds, therefore, that he has procedurally defaulted the issue of Ground 5. Petitioner has not suggested grounds to excuse his procedural default other than his assertion that Respondent waived all procedural defenses "by failing to make a time [sic] response to the Order to Show Cause." Doc. 36 at 4. The court addressed this issue in response to the Motion for Default Judgment or, in the Alternative, Other Appropriate Sanctions filed by Petitioner and held that no sanctions were warranted. Doc. 28. The district court adopted this court's Report and Recommendation. Doc. 32.

In addition to the reasons set forth in the court's previous Report and Recommendation the court notes that while Petitioner argues that he should not be held to a higher standard than Respondent, Petitioner defaulted the issue of Ground 5 pursuant to State procedural rules. As stated above, federal law specifically provides that he, therefore, is precluded from raising these issues pursuant to federal habeas review. On the other hand, federal procedural rules are relevant to Respondent's filing a response to the Order to Show Cause. As stated in the court's previous Report and Recommendation, it is doubtful that default judgment is available in federal habeas corpus proceedings. As such, the court finds that Petitioner has failed to state cause and prejudice to excuse his procedural default of Ground 5. The court finds, therefore, that Petitioner's Ground 5 should be dismissed.

The court further finds that Petitioner's § 2254 Petition is timely filed.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

(1) "was contrary to . . . clearly established Federal law, as
determined by the Supreme Court of the United States," or (2)
"involved an unreasonable application of . . . clearly established
Federal Law, as determined by the Supreme Court of the United
States." Under the "contrary to" clause, a federal habeas court may
grant the writ if the state court arrives at a conclusion opposite to that
reached by this Court on a question of law or if the state court decides
a case differently than this Court has on a set of materially
indistinguishable facts. Under the "unreasonable application" clause, a
federal habeas court may grant the writ if the state court identifies the
correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes

that the relevant state-court decision erroneously or incorrectly applied clearly established federal law.

See id. at 411. "'Rather the application [by the state-court] must also be unreasonable.'" Copeland

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 410). See also

Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001), cert. denied, 534 U.S. 1138 (2002).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary

to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as

set forth in [Supreme Court] cases" or if it "confronts a set of facts that are  materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

from [the Court's] precedent." 529 U.S. at 406. See also  Price v. Vincent, 538 U.S. 634, 640

(2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal

law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal

law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1),

the state court decision must "identif[y] the correct governing legal principle from [the Supreme]Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's decision "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001), cert. denied, 535 U.S. 934 (2002). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision

involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.") (citations omitted), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 123 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another

based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999). The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id. at 462.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely

would have been different absent the now-challenged [error]." Id. at 866 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## IV.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984) (Strickland)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." See id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> [P]resenting an ineffectiveness claim, the performance inquiry must be whether

counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The two-prong test enunciated in Strickland is likewise applicable to claims of ineffective assistance of appellate counsel. Pfau v. Ault, 409 F.3d 993, 939 (8th Cir. 2005). In regard to appellate counsel's failure to raise certain issues on appeal, the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). The Eighth Circuit has stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize [an attorney's] choice in hindsight.'" Id. (quoting Simmons

<u>v. Lockart</u>, 915 F.2d 372, 275 (8thCir. 1990)).

# V.
# DISCUSSION

**Ground 1 -Petitioner was denied due process based on <u>Roe v. Wade</u>, 410 U.S. 113 (1973), and <u>Webster v. Reproductive Health Services</u>, 492 U.S. 490 (1989), because the trial court overruled Petitioner's motion to dismiss Count V, felony murder, and Count VI, armed criminal action in regard to the felony murder alleged in Count V:**

In support of Ground 1 Petitioner contends that the evidence was insufficient to support a finding that he is guilty of second degree felony murder and the related armed criminal action because the charges require proof of the killing of a "person." Petitioner also argues that he was not given notice under Missouri law that the "killing of a child in utero" is an offense and that Missouri law does not 'prescribe any punishment" for such killing of a child. Doc. 36 at 8. Petitioner further argues that "the fetus in this case was non-viable"; that Missouri law recognizes "the difference between a non-viable and a viable fetus"; and that, as the fetus in this case was "non-vaible," Petitioner cannot "be guilty of taking a life which did not yet exist." Doc. 36 at 9. Petitioner cites the United States Supreme Court's decisions in <u>Roe v. Wade</u>, 410 U.S. 113 (1973), and <u>Webster v. Reproductive Health Services</u>, 492 U.S. 490 (1989), in support of his position.

Upon addressing the issue of Petitioner's Ground 1, the Missouri appellate court held:

In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we do not weigh the evidence but rather we determine whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. <u>State v. Shinn</u>, 921 S.W.2d 70, 72-73 (Mo. App. E.D.1996). The evidence, including all reasonable inferences drawn therefrom, is viewed in the light most favorable to the verdict, and all evidence and inferences to the contrary are disregarded. <u>Id</u>. at 72. The trier of fact determines the credibility of the witnesses. <u>Id</u>. at 73. The trier of fact may believe all, some or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. <u>Id.</u>

Section 565.021.1 provides in relevant part:

> A person commits the crime of murder in the second degree if he:
>
> ...
>
> (2) Commits ... any felony, and, in the perpetration ... of such felony ... another *person* is killed as a result of the perpetration ... of such felony.

(emphasis added).

The issue before us, then, is whether or not an unborn child is a "person" for purposes of the felony murder in the second degree statute.

Neither Chapter 565 nor the criminal code defines the term "person." However, Missouri courts have looked to Section 1.205 to conclude that an unborn child is a person for purposes of certain Missouri statutes.

Section 1.205 provides in relevant part:

1. The general assembly of this state finds that:

(1) The life of each human being begins at conception;

(2) Unborn children have protectable interests in life, health, and well-being;

(3) The natural parents of unborn children have protectable interests in the life, health, and well-being of their unborn child.

2. Effective January 1, 1988, the laws of this state shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state, subject only to the Constitution of the United States, and decisional interpretations thereof by the United States Supreme Court and specific provisions to the contrary in the statutes and constitution of this state.

3. As used in this section, the term "unborn children" or "unborn child" shall include all unborn child or children or the offspring of human beings from the moment of conception until birth at every

stage of biological development.

In State v. Knapp, 843 S.W.2d 345, 350 (Mo. banc 1992), the Missouri Supreme Court held that the provisions of Section 1.205, namely that an unborn child is to be considered a person, apply to define the term "person" in the involuntary manslaughter statute such that under Section 565.024, causing the death of an unborn child is causing the death of a "person." Applying rules of statutory construction, the court concluded that Section 1.205 is intended to apply to at least some other statutes, and in particular to the involuntary manslaughter statute. Id. at 347-348. However, the court expressly reserved the decision of whether or not Section 1.205 applies to other statutes. Id. at 347.

The court answered that question in Connor v. Monkem Co., Inc., 898 S.W.2d 89, 92 (Mo. banc 1995) when it held that a nonviable unborn child is a "person" capable of supporting a claim for wrongful death pursuant to Section 537.080. In reaching this holding, the court examined whether or not, in enacting Section 1.205.2, the general assembly expressed an intention that a nonviable unborn child be deemed a "person" for purposes of a Section 537.080 wrongful death claim. Id. The court concluded that Section 1.205.2 sets out a canon of interpretation enacted by the general assembly "directing that the time of conception and not viability is the determinative point at which the legally protectable rights, privileges, and immunities of an unborn child should be deemed to arise." Id. The court further stated that Section 1.205.2 "sets out the intention of the general assembly that Missouri courts should read all Missouri statutes in pari materia with this section." Id.

Our colleagues in the Western District also have considered the construction of Section 1.205 as it relates to the first-degree murder statute, Section 565.020.1. In State v. Holcomb, 956 S.W.2d 286, 290 (Mo. App. W.D.1997), the court held that an unborn child is a "person" for purposes of the first-degree murder statute. In reaching its holding, the court looked to the Knapp and Connor decisions for guidance.

We see no distinction between the reasoning used in Holcomb and that which we should use here. Therefore, we hold that an unborn child is a "person" for purposes of the felony murder in the second degree statute. To hold otherwise would be illogical in light of Knapp, Connor, and Holcomb. The general assembly's value of an unborn child as expressed in Section 1.205 and as applied in these cases does not change depending on the degree of the criminal killing, e.g., first-degree murder, second-degree murder, or involuntary manslaughter. The principle is the same, and we follow the precedent.

Defendant cites to Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Webster v. Reproductive Health Services, 492 U.S. 490, 109 S.Ct. 3040,

106 L.Ed.2d 410 (1989) to support his argument. We do not find these cases dispositive of the issue on appeal. In Knapp, the court noted that Section 1.205 deals exclusively with unborn children, and thus it is not an "abortion statute." 843 S.W.2d at 349. As in Holcomb, we find a significant distinction between a mother's right to terminate her pregnancy and the prosecution of a third party for murder of an unborn child without the consent of the mother, an intentional criminal act. 956 S.W.2d at 291. We also note that in Webster, the United State Supreme Court stated that Section 1.205 does not by its terms regulate abortion. 492 U.S. at 506, 109 S.Ct. 3040. The Court further stated that "the extent to which [the language of Section 1.205] might be used to interpret other state statutes or regulations is something that only the courts of Missouri can definitely decide. State law has offered protections to unborn children in tort and probate law ..., and Section 1.205.2 can be interpreted to do no more than that." Id. As discussed above, Missouri courts have decided to offer the protections of certain criminal and tort laws to unborn children, as assured by Section 1.205, and we adopt that interpretation here.

Defendant also argues that referring to Section 1.205 to interpret Section 565.021.1(2) violates Article III, Section 28 of the Missouri Constitution. We disagree. Article III, Section 28 does not prohibit the general assembly from adopting rules of construction. Connor, 898 S.W.2d at 92. As stated above, Section 1.205 sets out a "canon of interpretation enacted by the general assembly." Id. Thus, using the definition of a "person" in Section 1.205 to assist in interpreting Section 565.021.1(2) is not an amendment to the latter statute, and accordingly, not a violation of Article III, Section 28.

In summary, we hold that the provisions of Section 1.205, namely that an unborn child is to be considered a person, apply to define the term "person" in the felony murder in the second degree statute. Thus, under Section 565.021.1(2) and the circumstances of this case, causing the death of an unborn child is causing the death of a "person." The trial court did not err in denying Defendant's motion to dismiss Counts V and VI.

Further, sufficient evidence existed from which the jury might have found the defendant guilty beyond a reasonable doubt of felony murder in the second degree. The record established that the murder of Victim, committed during the robbery, also caused the death of her unborn child. Accordingly, Defendant's point one on appeal is denied.

Rollen, 133 S.W.3d at 61-64.

Issues concerning the interpretation and application of state law are not cognizable in federal

habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the

province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court."

In Patterson v. New York, 432 U.S. 197, 210 (1977), the United States Supreme Court held that state legislatures have flexibility in defining the elements of a criminal offense. Additionally, the Court has held that State legislatures may allocate burdens of proof by labeling elements of a defense as affirmative defenses or "they may convert elements into 'sentencing factor[s].'" McMillan v. Pennsylvania, 477 U.S. 79, 85-86 (1986).

"'The Supreme Court has made it clear that the states define the elements of state offenses' and 'in general there is no constitutional reason why a state offense must include particular elements.'" Carson v. Director of Iowa Dep't of Corr. Servs., 150 F.3d 973, 976 (8th Cir. 1989) (quoting Johnson v. Rosemeyer, 117 F.3d 104, 110 (3rd Cir. 1997) (citing McMillan, 477 U.S. at 84-86 (1986).

Further in <u>Webster</u>, 492 U.S. at 506, the Supreme Court held that "<u>Roe v. Wade</u> 'implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion.'" (citing <u>Maher v. Roe</u>, 432 U.S. 464, 474 (1977)). The Court further held that it is within the province of State law to "offer[] protections to unborn children in tort and probate law ... and §1.205.2 can be interpreted to do no more than that." <u>Id.</u>

Section 565.021.1 establishes the elements of murder under Missouri law. As stated above, a habeas petitioner does raise a constitutional issue when challenging the elements of a crime as defined by state law. <u>See</u> <u>Carson</u>, 150 F.3d at 976. Further, the Supreme Court made it clear in <u>Webster</u> that it is, likewise, within the province of a state to interpret its own statutes, and in particular § 1.205. Upon addressing the issue of Petitioner's Ground 1 the State appellate court interpreted Missouri statutes and held that under § 1.205 an unborn child is a person and that, therefore, an unborn child is a person for purposes of § 565.021.1. Petitioner's Ground 1challenges the State court's interpretation of Missouri law. As such, the court finds that Petitioner's Ground 1 is not cognizable under § 2254 and that it should be dismissed. <u>See</u> <u>Webster</u>, 492 U.S. at 506; <u>Patterson,</u> 432 U.S. at 210; <u>Carson</u>, 150 F.3d at 976; <u>Poe</u>, 39 F.3d at 207.


**Ground 2 - Petitioner received ineffective assistance of counsel because trial counsel failed to make a timely objection to, and properly preserve for appeal, the trial court's failure to compel Donnell Williams to testify at the request of defense counsel:**

In support of Ground 2 Petitioner argues that had trial counsel properly preserved the underlying issue of Ground 2 for appeal it is likely that Petitioner would have prevailed on appeal. Petitioner further contends that Williams's counsel coerced Williams into not testifying "by telling

Williams that if the state did not like his testimony, he would be charged with perjury"; that the trial court told Williams's counsel that Williams might not be entitled to assert the Fifth Amendment privilege because he pleaded guilty; and that, nonetheless, the trial court permitted Williams to assert the Fifth Amendment. Petitioner argues that his trial counsel "sat silently" while the trial court discussed with Williams's counsel whether or not Williams would testify and "never offered an objection." Doc. 18 at 3-4. Petitioner also contends that "any reasonably competent attorney would have recognized the threat made against Mr. Williams," would have objected and presented the issue in a motion for a new trial, and "would have sought immunity for Mr. Williams so that he might be compelled to testify in [Petitioner's] trial." Doc. 36 at 12. Additionally, Petitioner claims that he was prejudiced by counsel's alleged unreasonable performance because a reasonable jury would have acquitted Petitioner absent counsel's unreasonable performance. Doc. 36 at 12-13. Petitioner also claims that, in the interests of justice, the trial court should have granted Williams immunity. Doc. 36 at 14.

Petitioner argued in the appeal of the denial of his post-conviction relief motion that his trial counsel was ineffective for failing to object when Williams asserted his Fifth Amendment right against self-incrimination. Petitioner further alleged that if trial counsel had objected and the objection was not sustained the underlying issue would have been preserved for appeal. Upon addressing this issue the State appellate court held as follows:

> To obtain a hearing on a claim of ineffective assistance of trial counsel, a movant must allege facts, not refuted by the record, that show that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and, as a result, the movant was thereby prejudiced. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 674 (1984). To show prejudice, a movant must demonstrate that, but for counsel's errors, the result of the trial would have been different. State v. Twenter, 818 S.W.2d 628, 635 (Mo.

banc 1991).

> ...

> At trial, the co-defendant appeared with his own counsel. The court advised counsel that because the co-defendant had pleaded guilty in this case, the Fifth Amendment privilege may not be applicable, unless there was another reason to assert the privilege. Counsel replied that the co-defendant was subject to being charged with another offense, such as perjury. The trial court agreed that the privilege applied. The co-defendant was then sworn and testified that if he were to be called as a witness, he would take the Fifth Amendment. Movant's counsel did not object or request that the co-defendant be compelled to testify.

> ...

> To establish a claim of ineffective assistance of counsel for failing to object, a movant must show 1) that the objection would have been meritorious and 2) that the failure to object substantially deprived the movant of his right to a fair trial. Dodds v. State, 60 S.W.3d 1, 5 (Mo. App. 2001). Movant did not allege any facts in his motion that would support a conclusion that an objection to the co-defendant's assertion of the Fifth Amendment would have been meritorious. Movant did not show that if counsel had objected, the objection would have been sustained.

> Moreover, movant has not shown prejudice on his alternate claim of failure to preserve. Movant argues that he was prejudiced by counsel's failure to object because the issue of the co-defendant's assertion of the Fifth Amendment was not preserved for review. We review claims of ineffective assistance of counsel to determine if counsel's conduct deprived movant of a fair trial; movant's claim that counsel failed to adequately preserve an issue for appellate review is not cognizable under Rule 29.15. Fears v. State, 991 S.W.2d 190 (Mo. App. 1999).

Resp. Ex. 9 at 3-5.

Also, upon considering on direct appeal Petitioner's argument that the trial court erred in not compelling Williams to testify, the Missouri appellate court held:

> At trial, defense counsel sought to call Williams as a witness. In an offer of proof, Williams stated that if called, he intended to assert his Fifth Amendment privilege against self-incrimination. The trial court stated that Williams already had pled guilty to the facts of this case, and thus the Fifth Amendment privilege may not apply, unless there was a different reason, such as the possibility of being charged with another crime. The trial court did not compel Williams to testify. Defense

26

counsel then sought to introduce statements made by Williams to the police. In an offer of proof, defense counsel stated that Williams' statements included that Defendant did not identify Victim's car for Williams or provide a signal to Williams indicating when Victim was exiting the store or if she had the bank bag. However, the trial court found that the statements did not meet any exception to the hearsay rule, were not trustworthy, and therefore the statements were inadmissible. Defendant did not testify at trial.

...

The privilege against self-incrimination under the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Missouri's constitution has a similar provision. Mo. Const. art. I, sec. 19. A guilty plea waives the privilege as to the details of the crime to which the witness was convicted. State v. Sanders, 842 S.W.2d 170, 174 (Mo. App. E.D.1992).

The record indicates that Williams may have waived his privilege against self-incrimination. However, even if he did, we nonetheless find that the trial court did not plainly err in failing to compel Williams to testify because Defendant has not demonstrated that a manifest injustice or miscarriage of justice resulted from the failure. The record establishes Defendant's guilt by overwhelming evidence. Defendant's own statements revealed the following: Defendant planned the robbery with Williams. They decided they needed two cars so Defendant drove Williams to Williams' house to get the maroon car. They then returned to Defendant's apartment. Defendant went into his apartment to retrieve a handgun that he had borrowed from Williams two weeks earlier. Defendant gave the gun to Williams. They then left Defendant's apartment at about the same time and drove in separate cars to the store. Defendant entered the store, spoke with Victim, exited the store, looked at Williams and nodded to signal that Victim was there and that the robbery was still on. After seeing Williams shoot Victim and pick up the bag of money, Defendant drove to Williams' house, where Williams gave him about $5,000 from the robbery. Defendant then drove back to his apartment complex where he hid $4,000 in a drawer at his girlfriend's apartment and about $1,200 in a sock in a closet at his apartment.

Further evidence of Defendant's guilt included: Defendant's presence at the scene, standing against his car watching the crimes with no expression, getting into his car and driving off as Victim fell to the ground. Money from the robbery and the same ammunition used in the murders were found hidden at Defendant's apartment and his girlfriend's apartment, to which he had a key. The same ammunition was found at Williams' house. On the day of the crimes, neighbors near Defendant's

girlfriend's apartment saw Defendant come out of the apartment, get into a maroon car with no license plates and a temporary tag in the rear window where he spoke with a black male, an then return to the apartment, looking "excited and joyous." Later that evening, the police also saw Williams drive in the maroon car alongside Defendant's apartment, turn around and leave. Finally, Defendant told the police different versions of the day's events, indicating an attempt to hide his involvement in the crimes. The jury could reasonably infer from this evidence that at the least Defendant did not "oppose the crimes committed," Defendant's stated reason for wanting to call Williams to testify.

Therefore, Defendant has not met his burden of demonstrating manifest injustice or miscarriage of justice resulted in the trial court's failure to compel Williams to testify. Accordingly, the trial court did not plainly err in allowing Williams to assert his Fifth Amendment privilege against self-incrimination. Defendant's point two on appeal is denied.

Rollen, 133 S.W.3d at 60-61.

Pursuant to Williams, this court will consider federal law applicable to Petitioner's Ground 2. The court has set forth above the standard applicable to claims of ineffective assistance of counsel. In particular, in regard to a claim of ineffective assistance of counsel based on a failure to object, a habeas petitioner must demonstrate, "not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different." Bucklew v. Luebbers, 436 F.3d 1010, 1021 (8th Cir. 2006), cert. denied, 127 S.Ct. 725 (2006). Where there is overwhelming evidence against a defendant, failure to object has been found to not effect the outcome of a defendant's case. See e.g., Rodden v. Delo, 143 F.3d 441, 448 (8th Cir. 1998); Irons v. Lockhart, 741 F.2d 207, 209 (8th Cir. 1984). In any case, the Eighth Circuit holds that it is not objectively unreasonable for counsel not to make a meritless objection. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).

Further, under federal law by waiving his Fifth Amendment privilege against certain charges, a defendant does not waive his Fifth Amendment privilege to other charges. See United States v.

Mejia-Uribe, 75 F.3d 395, 399 (8th Cir. 1996). Also, the "Sixth Amendment 'right to compulsory process does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self incrimination.'" Id. at 399-40 (quoting United States v. Robaina, 39 F.3d 858, 862 (8th Cir.1994). See also United States v. Carr, 67 F.3d 171, 176 (8th Cir. 1995) ("The defendant's Sixth Amendment right, however, does not include the right to compel a witness to waive his Fifth Amendment privilege.") (citing Robaina, 39 F.3d at 862).

The Missouri appellate court specifically held that Strickland's two pronged test was applicable to Petitioner's claim that he received ineffective assistance of counsel because his trial counsel failed to object to the court's failure to compel Williams to testify. The court further considered that the motion court found that had Williams testified, he would have been subject to cross-examination. Upon considering Petitioner's claim on direct appeal that the trial court erred when it ruled that Williams did not have to testify, the Missouri appellate court held that even if the trial court erred because Williams "may have waived his privilege against self-incrimination," the record established "overwhelming evidence" of Petitioner's guilt and that this evidence included Petitioner's own testimony. Indeed, the evidence as set forth by the State appellate court was overwhelming. Because there was overwhelming evidence of Petitioner's guilt, it cannot be said that Petitioner was prejudiced by the trial court's permitting Williams to invoke the Fifth Amendment. The court finds, therefore, to the extent the State appellate court considered federal law in regard to the issue raised in Petitioner's Ground 2, that the State court's decision is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 687; Bucklew, 436 F.3d at 1021; Rodden, 143 F.3d at 448; Irons, 741 F.2d at 209. The court further finds that the State court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that

Petitioner's Ground 2 is without merit and that it should be dismissed.

**Ground 3 -Petitioner received ineffective assistance of counsel because direct appeal counsel failed to raise on appeal the trial court's denial of Petitioner's "right to cross-examine Detective Joseph Eagan about Donnell Williams' exculpatory statements":**

In regard to the issue of Petitioner's Ground 3 Respondent argues that had Petitioner's appellate counsel raised on appeal the claim in question, the outcome would have been the same had not the issue been raised. Respondent further argues that counsel cannot be found ineffective for failing to raise an unmeritorious argument. Respondent noted that Chambers v. Mississippi, 410 U.S. 284, 300 (1973), provides that a defendant has a constitutional right to proffer exonerating statements that would otherwise be hearsay if they were made under circumstances providing "considerable assurance of their reliability." Respondent further references the test for reliability for such statements as set forth in Chambers. Pursuant to the requirements for reliability articulated in Chambers, as articulated below, Respondent states that Williams's statements which Petitioner sought to introduce did not incriminate Williams although they exculpate Petitioner; that Williams's statements were neither spontaneous nor made shortly after the murder occurred; and that Williams's statements were not corroborated by other evidence.

In response to Respondent's distinguishing Chambers, Petitioner argues that the requirements of Chambers that the confession be self-incriminating and that it be corroborated by other evidence are not relevant in Petitioner's case because Williams "pleaded guilty to being the trigger-man." Doc. 36 at 15. Additionally, Petitioner contends that Washington v. Texas, 388 U.S. 14 (1967), is applicable to his case. Doc. 36 at 15-16.

Upon addressing all claims made by Petitioner alleging ineffective assistance of appellate

counsel, the State appellate court held:

> In order to demonstrate that appellate counsel provided ineffective assistance, a movant must show: 1) that the actions of appellate counsel were outside the wide range of professionally competent assistance; 2) that counsel's errors were so severe that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and 3) counsel's deficient performance resulted in prejudice. Franklin v. State, 24 S.W.3d 686, 690-91 (Mo. banc 2000). To support a claim that appellate counsel failed to raise a point on appeal, "'strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it.'" Id. at 691 (quoting Moss v. State, 10 S.W.3d 508, 514 (Mo. banc 2000)).

Resp. Ex. 9 at 10.

In particular, upon denying Petitioner post-conviction relief based on the issue raised in

Petitioner's Ground 3, the State appellate court held:

> Counsel proposed to elicit from Detective Eagan the co-defendant's statements that the co-defendant knew the victim and the car she drove prior to the robbery; that the co-defendant and movant had no plan to meet at the convenience store; and that movant did not signal the co-defendant that the victim was coming out of the convenience store with the money bag. Movant argues that he was prejudiced because this claim would have caused the appellate court to reverse and remand for a new trial.

> While cross-examining Detective Eagan at trial, defense counsel asked if the codefendant had made certain exculpatory statements about movant. The trial court sustained the state's hearsay objection to this line of questioning. After the co-defendant asserted his Fifth Amendment privilege not to testify, defense counsel sought a ruling on whether it could introduce the co-defendant's statements to the detectives. After hearing the offer of proof, the trial court concluded that even if the co-defendant was unavailable as a witness because of his assertion of his Fifth Amendment privilege, his hearsay statements were made under circumstances that made them unstrustworthy and unreliable. Defense counsel included this denial in his motion for new trial. However, appellate counsel did not raise this issue on appeal.

> In his amended motion, movant alleged that if appellate counsel had raised this error on appeal, the appellate court would have found that the evidence did not establish that movant acted with the codefendant when the codefendant committed the robbery and murder. Movant further alleged that the state's evidence "at best'

demonstrated that movant and the codefendant knew each other prior to the offense, and that if the evidence that suggested that codefendant acted alone had been in evidence, it would have created a reasonable doubt that movant planned the robbery. He alleged that had this error been raised, the appellate court would have reversed and remanded for a new trial.

The motion court found that the jury did in fact hear the evidence that the codefendant acted alone because Detective Eagan had testified to the codefendant's statements on cross-examination before the court sustained the hearsay objection. The motion court also found that the record refuted movant's claim that there was no evidence that he acted together with codefendant, and that there was substantial evidence to the contrary, particularly from movant's own admissions.

In his amended motion movant failed to plead facts showing that the appellate court would have reversed the trial court's exclusion of the hearsay statements on the grounds that they were unreviewable. To be admissible, the hearsay statements must have been made "'under circumstances that provided considerable assurances of their reliability.'" State v. Blankenship, 830 S.W.2d 1, 7 (Mo banc 1992) (quoting Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973)). Further, the record refutes any conclusion that if codefendant's statements had been admitted, the verdict would have different. As already set out, substantial evidence, including movant's own statements, demonstrated that he acted together with codefendant. As a result movant has not shown prejudice.

Resp. Ex. 9 at 10-12.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 3. The court has set forth above the standard applicable to claims of ineffective assistance of counsel including claims of ineffective assistance of appellate counsel. Additionally, a habeas petitioner cannot establish the prejudice required by Strickland where the issue which appellate counsel failed to raise lacked merit. Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988) (citing Strickland, 466 U.S. at 668. Further, the Supreme Court acknowledged in Chambers, 410 U.S. at 298-99, that, "[a] number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination." The Court further held that "a defendant has a

constitutional right to proffer exonerating statements, that would otherwise be hearsay, if they were made under circumstances providing 'considerable assurance of their reliability.'" Skillicorn v. Luebbers, 475 F.3d 965, 970 (8th Cir. 2007) (quoting Chambers, 410 U.S. at 300). Indicia for the reliability of a hearsay statement include the following: (1) the statement was "truly against the penal interest of the speaker"; (2) the statement was spontaneously made; and (3) the statement was corroborated by other evidence. Id. (quoting Chambers, 410 U.S. at 300).

Upon considering the issue of Petitioner's Ground 3, consistent with federal law, the State appellate court considered that the trial court denied the defense counsel's offer of proof regarding cross examination of Detective Eagen based on the conclusion that the hearsay statements at issue were untrustworthy and unreliable. See Chambers, 410 U.S. at 298-99. The State appellate court concluded that the criteria for reliability of hearsay as set forth in Chambers were not met in regard to Williams's statement; in particular, the statement was not corroborated by other evidence, and, in fact, was inconsistent with other evidence.

Pursuant to the second prong of the Strickland test for ineffective assistance of counsel, the State appellate court concluded that Petitioner was not prejudiced by the trial's court's sustaining the objection to defense counsel's cross examination of Detective Eagan regarding Williams's statement and that, therefore, he was not prejudiced by the failure of Petitioner's appellate counsel to raise this issue on appeal. In this regard, the State appellate court considered that substantial evidence demonstrated that Petitioner acted with Williams. As noted by the State appellate court, this evidence included, among other things, Petitioner's statements that he planned the robbery with Williams; that after retrieving the handgun to be used in the robbery Petitioner gave it to Williams immediately prior to the robbery; that he went into the store and signaled Williams that the victim was there; that the

robbery was still on when he left the store; received from Williams his share of the money taken in the robbery; and that he hid $4,000 of the money in his girlfriend's apartment. Resp. Ex. 9 at 7. Moreover, other witnesses testified that they saw Petitioner at the scene and that Petitioner watched the murder take place while leaning against his car. Also, police found money from the robbery in the apartment of Petitioner's girlfriend. Resp. Ex. 9 at 7. Considering such evidence it cannot be said that Petitioner was prejudiced by the purported ineffective assistance of counsel alleged in Ground 3.

To the extent Petitioner claims Washington, 388 U.S. 14, is controlling, that case does not address the reliability of testimony which is otherwise inadmissible hearsay as does Chambers, 410 U.S. 284; the testimony of Detective Eagen which Petitioner alleges should have been admitted is such hearsay. Moreover, in Washington the issue before the Court was whether the Sixth Amendment right to have compulsory process for obtaining witnesses was violated. That is not the underlying issue raised in Petitioner's Ground 4.

The court finds, therefore, that the decision of the State appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law; that it is a reasonable interpretation of federal law; and that the State appellate court reasonably applied federal law to the facts of Petitioner's case. See Strickland, 466 U.S. at 668; Chambers, 410 U.S. at 298-99; Skillicorn, 475 F.3d at 970; Pfau, 409 F.3d at 939. The court finds, therefore, that Petitioner's Ground 3 is without merit and that it should be dismissed.

**Ground 4 - Petitioner received ineffective assistance of counsel because direct appeal counsel failed to raise on appeal "the issue that the prosecutor misled the jury during closing arguments to believe that [Petitioner] had given Mr. Williams the bullets used in the shooting":**

In support of Ground 4 Petitioner contends that the prosecutor misled the jury during closing argument; that there was no evidence to support the prosecutor's contention that Petitioner gave Williams the bullets used in the shooting; and that had appellate counsel raised the issue of improper argument by the prosecutor there is a reasonable likelihood that Petitioner would have prevailed on appeal. Petitioner further contends that the record does not support a claim that the same ammunition used in the crime was found in Petitioner's home; that a firearms expert testified that the ammunition seized was for use in an automatic pistol and the victim was shot with a revolver; that the prosecutor argued facts not in evidence; and that Petitioner was prejudiced as a result of appellate counsel's ineffective assistance of counsel   Doc. 36 at 22-24.

Upon addressing the issue of Petitioner's Ground 4, the State appellate court held:

> In the state's rebuttal closing argument, the prosecutor told the jury that he was going to give them a theory supported by the evidence. As part of that theory, the prosecutor said that movant gave the bullets for the gun used in the shooting to the codefendant because he "never had any ammunition for this gun." Defense counsel's objection, that there was no evidence that the co-defendant did not have ammunition for his own gun, was overruled. In the motion for new trial, movant claimed that the trial court's action was erroneous because there was no evidence that movant gave co-defendant the bullets. Appellate counsel did not raise this claim on appeal.

> In his amended motion, movant alleged that appellate counsel was ineffective for failing to raise this issue on appeal because the prosecutor's statement was not supported by any evidence and was improper and misleading. Movant further alleged that the prosecutor's statement that the movant gave the co-defendant the bullets had a decisive effect on the jury and would have required reversal and remand for a new trial if it had been raised on appeal.

> The motion court found movant's allegations refuted by the record because, immediately prior to making the statement about the bullets, the prosecutor informed the jury that he was making reasonable inferences based on evidence. It concluded that it was not error to argue reasonable inferences.

> Movant is not entitled to relief for two reasons. First, the claim of error in the

motion for new trial, that the argument was improper because there was no evidence that defendant had given bullets to the co-defendant, was not the ground asserted in the objection at trial, that the argument was improper because there was no evidence that the co-defendant did not have ammunition for his own gun. Accordingly, this issue was not preserved on appeal. The general rule with respect to preservation of error is that an objection stating the ground must be made at trial, the same objection must be set out in the motion for new trial, and must be carried forward in the appeal brief to preserve it. (citations omitted). A party cannot change or broaden an objection beyond that made in the trial court. State v. Williams, 978 S.W.2d 454, 458 (Mo. App. 1998). "'An attorney will not be held ineffective for failure to raise unpreserved error on appeal.'" Honeycutt v. State, 54 S.W.3d 633, 650 (Mo. App. 2001) (quoting Hamm v. State, 7 S.W.3d 433, 442 (Mo. App. 1999)).

Second, the record refutes movant's claim that he would have prevailed on appeal, even if this claim had been properly preserved. "Prosecutors are entitled to argue matters supported by the evidence and reasonable inferences therefrom." State v. Garner, 14 S.W.3d 67, 76 (Mo. App. 1999). The prosecutor told the jury that he was presenting a "theory" from the evidence. The evidence that movant gave the co-defendant a gun on the day of the crimes, along with the evidence that the ammunition found in the gun used in the crimes matched the ammunition found in movant's closet, supported an inference that movant also gave the co-defendant the ammunition for the gun.

Appellate counsel was not ineffective for failing to raise this issue on appeal because it was not preserved, and even if it had been preserved, it would not have required reversal. The motion court did not clearly err in denying this claim without an evidentiary hearing. Point five is denied.

Resp. Ex. 9 at 14.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 4. The court has set forth above the federal standard applicable to whether or not a defendant has received ineffective assistance of appellate counsel. Further, the Eighth Circuit holds that where an underlying issue is not preserved for appeal, appellate counsel's "failure to raise such an issue cannot be considered deficient performance." Kitt v. Clarke, 931 F.2d 1246, 1250 (8th Cir. 1991). Under such circumstances the prejudice required to establish ineffective assistance of counsel is not present.

See id. (citing Meyer, 854 F.2d at 1115-16). See also Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002) (holding that given the narrow standard of plain error review, "it is difficult to prove ineffective assistance based upon appellate counsel's failure to raise an issue that, if raised, would have been subject to plain error review").

Additionally, under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further stated by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

United States v. Conrad, 320 F.3d. 851, 855 (8th Cir. 2003).

Under federal law "[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments," and an appellate court will not reverse the trial court's determinations in this regard "absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992) (citing United States v. Segal, 649 F.2d 599, 604 (8th Cir.1981)). "The facts of each case must be examined independently to determine if the prosecutor's remarks were unduly prejudicial to the defendant." Id. at 770 (citing United States v. Splain, 545 F.2d 1131, 1135 (8th Cir.1976)).

First, upon considering the issue of Ground 4, the State appellate court concluded that the underlying issue raised in Petitioner's Ground 4 was not the same as the objection made by Petitioner's trial counsel to the prosecutor's argument. The issue underlying Ground 4 is that argument improperly suggested Petitioner supplied the ammunition while the objection made at trial was that there was no evidence that Williams did not have ammunition for his own gun. The State appellate court reasoned that the underlying issue raised in Ground 4 had not been properly preserved for appellate review and that counsel cannot be held ineffective for failing to appeal such error. Such reasoning is consistent with the prejudice prong of Strickland and with federal law providing that a

defendant does not receive ineffective assistance of counsel where appellate counsel fails to raise issues not preserved for appeal. See Williams, 311 F.3d at 897; Meyer, 854 F.2d at 1115-16.

Upon considering the issue of Ground 4 on its merits, the State appellate court considered that the prosecutor's argument was proper as he was permitted to argue inferences from the evidence. The court also considered that the evidence supported an inference that Petitioner gave Williams the ammunition for the gun. Pursuant to the second prong of the Strickland test for ineffective assistance of counsel, the State court concluded that Petitioner was not prejudiced by the failure of appellate counsel to raise the underlying issue of Ground 4. As such, the court finds that the decision of the State appellate court in regard to the issue of Ground 4 is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the State appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 4 is without merit and that it should be dismissed.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1-4 are without merit and that he has procedurally defaulted Ground 5. As such, the court finds that Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the First Amended Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; Doc. 18.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.3d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of May, 2007.